**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **TARA A. RYAN,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 24-cv-11111-DJC** |
| ) | |
| **CATHERINE MCCULLOUGH,** ) | |
| **and the TOWN OF NEEDHAM,** ) | |
| **MASSACHUSETTS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                      **February 24, 2025**

## I.    Introduction

Plaintiff Tara A. Ryan ("Ryan" or "Plaintiff") has filed this lawsuit against Defendants Catherine McCullough ("McCullough"), a police officer for the Town of Needham, Massachusetts and the Town of Needham (the "Town") (collectively, "Defendants") alleging a due process violation and a Fourth Amendment unlawful seizure under 42 U.S.C. § 1983 against McCullough (Counts I and II), malicious prosecution against both Defendants (Count III) and a violation of the Massachusetts Tort Claims Act ("MTCA") against the Town (Count IV).  D. 1. Defendants have moved to dismiss.  D. 6.  For the reasons stated below, the Court ALLOWS the Town's motion to dismiss and ALLOWS McCullough's motion to dismiss in part and DENIES it in part.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III.    Factual Background

The following facts are drawn from Ryan's complaint, D. 1, and Exhibits 4, 5, 7 and 8,[1] and are accepted as true for the purpose of resolving the motion to dismiss.

---

[1] At the motion to dismiss stage, the Court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

Within the category of official public records, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)). The Court, therefore, considers Exhibits 4, 5, 7 and 8

1.    *The Alleged Assault*

On Friday, November 22, 2019, Ryan was working as a nanny of the seven-month-old child of Victoria Konrad ("Victoria") and Eric Konrad ("Eric") (collectively, "the Konrads'") at their residence in Needham, Massachusetts.  D. 1 ¶ 7.  The Konrads used a Ring home security system with a camera positioned to provide an open view of their living room.  Id. ¶ 8.  The camera provided "real time" footage and created recordings when activated by a motion sensor.  Id. ¶¶ 9–10.  The recordings would continue until the motion stopped or the camera timed out.  Id. ¶ 10.  The default recording time for the Ring camera was one minute.  Id.

On the afternoon of November 22, 2019, Victoria reviewed the Ring recordings from earlier in the day and noticed footage that she thought showed Ryan abusively dropping or throwing their child to the ground.  Id. ¶ 11.  Victoria alerted Eric, who called the Needham Police Department.  Id. ¶ 12.  McCullough and one other Needham police officer were dispatched to the residence, where Victoria showed McCullough the Ring playback.  Id. ¶¶ 12–13.  McCullough arrested Ryan for felony assault and battery with a dangerous weapon (i.e., the floor).  Id. ¶ 13.

---

to the Defendants' motion papers.  D. 7-4, 7-5, 7-7, 7-8.  These are the complaint and docket from Ryan's related state court proceeding against her defense attorney and the *nolle prosequi* and a transcript from the criminal action against Ryan.

By contrast, police reports are not susceptible to judicial notice and, therefore, generally cannot be considered on a motion to dismiss.  See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (declining to include police incident reports as part of Rule 12(b)(6) record).  Accordingly, the Court has not considered Exhibit 1 to the Defendants' motion papers.

Defendants attempt to introduce email communications on the basis that they were provided to Ryan through a pre-suit FOIA request and Ryan, therefore, "had them in her possession at the time she framed the [c]omplaint."  D. 7 at 3 n.6; see D. 19 at 1–2.  Defendants also argue these emails can be considered because Ryan's complaint relies upon other email exchanges.  D. 19 at 1–2.  But neither of these arguments suggests any of the limited exceptions for considering documents outside of the complaint at this stage apply.  Alt. Energy, 267 F.3d at 33.  Accordingly, the Court has not considered Exhibits 2, 3 and 6 to the Defendants' motion papers.

## 2.    *McCullough Charges Ryan*

Later that day, Victoria sent McCullough two separate video recordings of the alleged assault ("Segment 1" and "Segment 2").  Id. ¶ 14.  Both recordings were stamped with the date and the video's starting time.  Id. ¶ 15.  Segment 1 was stamped "11/22/2019 14:57:20" and ran for 1 minute and 1 second.  Id.  Segment 2 was stamped "11/22/2019 14:58:24," meaning there was a time-gap between the end of Segment 1 and the beginning of Segment 2.  Id.  As alleged, this gap was the time from when the first recording timed out to when the new recording was motion triggered.  Id.  The final frames of Segment 1 depict Ryan holding the child on her hip and moving him toward the floor with support from her left arm.  Id. ¶ 16.  These frames show no sudden downward motion suggesting harmful intent or recklessness.  Id.  The initial frames of Segment 2 show the child already on the floor and rolling onto his stomach to crawl.  Id. ¶ 17.  The child appears happy with no signs of distress or surprise.  Id.  As Ryan alleges, the child sustained no injuries under her care.  Id.

That evening, McCullough emailed Victoria to request "an uninterrupted video from [R]ing/the [C]loud[.]"  Id. ¶ 18.  Victoria responded that she "spoke with [R]ing and they do not have the uninterrupted video."  Id.  McCullough separately requested that Victoria re-send the video clip starting at 2:58 p.m.  Id. ¶ 19.

Later that night, an assistant clerk-magistrate determined there was no probable cause to charge Ryan for felony assault and battery and ordered Ryan released.  Id. ¶ 20.  McCullough then promised the Konrads that she would re-charge Ryan.  Id.  Two days later, on November 24, 2019, Victoria emailed McCullough a video clip (the "Video").  Id. ¶ 21.  Victoria said she and Eric had used Eric's phone "to take a video of the two clips playing consecutively of Tara committing the assault on our son so that the drop is clearly viewed."  Id. ¶ 22.  The Video

showed the same footage as the final frames of Segment 1 and the first frames of Segment 2 but eliminated the time gap between the two segments, making it appear as if the child moved from Ryan's hip to the floor in an instant.  Id. ¶¶ 23–24.

On November 27, 2019, McCullough applied for and received a criminal complaint against Ryan for felony assault and battery and reckless endangerment of a child.  Id. ¶ 26. These charges were based upon the Video and included no reference to Segments 1 and 2.  Id. Likewise, McCullough's incident report dated November 27, 2019 referenced neither Segments 1 nor 2, nor her email exchanges with the Konrads from November 22, 2019 through November 24, 2019 (the "Konrad emails").  Id. ¶ 33.  As a result of this complaint, Ryan was summoned, charged and arraigned in December 2019.  Id. ¶ 26.

### 3.    McCullough Does Not Share Segments 1 and 2 with Counsel

On January 2, 2020, the Norfolk District Attorney's ("DA's") Office issued a "Discovery/Compliance Request" to the Needham Police Department for various materials including the "videos retrieved from Ring home security" and "[e]mails from Konrads."  Id. ¶ 28.  That day the Needham Police Department Court Officer texted McCullough to ask:  "[d]id you ever get the videos from [R]ing for the [T]ara [R]yan case?  D[A] wants them and emails from [K]onrads."  Id. ¶ 29.  McCullough had collected seven videos from Victoria, all through email:  the Video, Segments 1 and 2 and four additional recordings from the same [R]ing camera taken earlier in the day on November 22, 2019 ("Segments 3–6"), id. ¶ 30, but McCullough omitted Segments 1 and 2 from her response, id. ¶ 31.  McCullough also allegedly did not provide prosecutors with the Konrad emails.  Id. ¶ 32.

5

4.    *Segments 1 and 2 are Disclosed Days Before Trial*

In or about January 2022, while preparing for Ryan's upcoming criminal trial, a victim advocate in the DA's office noticed that the Video contained an irregularity at the moment of the alleged assault.  Id. ¶ 37.  On February 14, 2022, the victim advocate told McCullough that she had asked Victoria to send McCullough "the [R]ing camera portion of the footage where defendant drops the baby . . . .  The reason for this request is because the video we have is a recording of the recording (someone's phone is recording the [R]ing camera footage of the incident[)]."  Id.  That same day, Victoria emailed McCullough Segments 1–6, which she described as "the links to the [R]ing footage showing the events leading to as well [as] the actual assault on our son."  Id. ¶ 38.  She attached Segments 3–6 under the descriptor, "[t]hese are leading up to the assault," and Segments 1 and 2 under the descriptor, "[t]hese two are of the assault."  Id.  McCullough forwarded this email to the Needham Police Prosecutor who on February 15, 2022 forwarded it to the Assistant District Attorney ("ADA").  Id. ¶¶ 37, 39.  The ADA did not share this footage with the defense until nine days later, on the evening of Thursday, February 24, 2022, with the trial set to begin the following Monday.  Id. ¶ 40.  When the ADA shared the footage, she sent it with other information requested by the defense, and as an aside wrote, "I know you already have these videos, but just passing along again."  Id.  She also deleted language highlighting that Segments 1 and 2 comprised the footage of the assault.  Id.

At a February 28, 2022 court conference, the parties discussed the Video, and Ryan's defense attorney Philip O'Brien ("O'Brien") asserted it contained a "skip."  D. 7-7 at 7–10.  The ADA acknowledged that "the video that the Commonwealth intend[ed] to offer" was comprised of "two different segments," but insisted they occurred "one [] right [] after the other."  Id. at 10.

6

5.    *Ryan is Convicted of Misdemeanor Assault and that Conviction is Later Vacated*

On March 1, 2022, a jury convicted Ryan of misdemeanor assault and she was sentenced to a term of two years with one year to be served in the house of corrections.  D.1 ¶ 42.  The key evidence offered to prove the assault was the Video.  Id.  At trial, Victoria testified that the Video depicted a continuous event.  Id.  Segments 1 and 2 were never introduced as evidence. Id.  Ryan served approximately four and a half months in the Suffolk County House of Corrections before she was released to home confinement in July 2022.  Id. ¶ 43.

In connection with a motion for a new trial, Segments 1 and 2 came to the attention of Ryan's new counsel, who presented them to the court in January 2023.  Id. ¶ 44.  The DA then consented to the motion for a new trial, Ryan's conviction was vacated and the DA dismissed the case.  Id.  The DA's *nolle prosequi*, dated January 12, 2023, stated that:

> Based on information brought to the Commonwealth's attention on January 4, 2023, the Commonwealth withdrew its opposition to the defendant's motion for new trial, which was allowed without opposition on January 6, 2023. Representatives from the Commonwealth contacted the parents of the victim, who was an infant at the time of the 2019 events that lead to the charges at issue.  The victim's parents informed the Commonwealth that they do not wish to testify in a retrial of this matter.  Without testimony from the victim's mother, the Commonwealth will be unable to satisfy its burden at trial.

D. 7-8 at 2.

6.    *Ryan Sues O'Brien for Malpractice*

On May 4, 2023, Ryan filed a separate lawsuit in Suffolk Superior Court against O'Brien alleging malpractice.  See D. 7-4; D. 7-5.  During her engagement of counsel, Ryan allegedly pointed out an irregularity (a hesitation or skip) at the precise point in the Video where the child went from her hip to the floor.  D. 7-4 ¶¶ 10–11.  After reviewing the Video, O'Brien moved for funds to "secure the services of an expert to evaluate the R[ing] video and testify to video lapse

and delay." Id. ¶ 12.  The court allowed this motion on March 13, 2020.  Id.  Nevertheless, O'Brien did not contact an expert to evaluate the Video until February 18, 2022, ten days before the February 28, 2022 trial, and he did not send the expert the Video until February 25, 2022.  Id. ¶ 13.  The expert's preliminary analysis revealed that the Video reflected an unrecorded skip rather than Ryan dropping or throwing the child to the floor.  Id. ¶¶ 14–16.  The expert recorded these findings in a written report provided to O'Brien on February 25, 2022.  Id. ¶ 17.  He also informed O'Brien that he would not be available to testify on March 1, 2022, but noted he had availability later in March.  Id.  Still, O'Brien did not attempt to use the expert or his report in any way at trial or seek a continuance to do same, id. ¶ 20, nor did he research or raise potential explanations for the time gap, id. ¶ 21.  Ryan's complaint against O'Brien also notes that O'Brien possessed Segments 1 and 2 by February 24, 2022, but did not review them carefully or at all, did not provide them to the expert and failed to make use of them at trial.  Id. ¶¶ 18–19.  Ryan and O'Brien ultimately reached a settlement agreement and stipulated to dismissal of the malpractice claim.  See D. 7-5 at 4.

## IV.    Procedural History

Ryan instituted this action on April 25, 2024.  D. 1.  Defendants now have moved to dismiss.  D. 6.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 20, 21.

## V.    Discussion

### A.    Judicial Estoppel Does Not Bar Ryan's Claims

Defendants argue that judicial estoppel bars Ryan's complaint because Ryan asserts "alternative facts" from those she alleged in her malpractice action against O'Brien.  D. 7 at 6–7. "[T]he doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent

with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." United States v. Szpyt, 785 F.3d 31, 41 (1st Cir. 2015) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003)) (internal quotation marks omitted). The doctrine is "equitable and thus cannot be reduced to a precise formula or test." Zedner v. United States, 547 U.S. 489, 504 (2006). "It is, however, widely agreed that, at a minimum, two conditions must be satisfied before judicial estoppel can attach." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (collecting cases). "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." Id. "Second, the responsible party must have succeeded in persuading a court to accept its prior position." Id.

First, Ryan's current allegations are not directly inconsistent with the facts she alleged in her malpractice action. Here, Ryan alleges Segments 1 and 2 were never properly disclosed, D. 1 ¶¶ 26, 31, 33–34, 38–40, whereas the principal allegations in Ryan's complaint against O'Brien related to his failure to consult a video expert in a timely fashion and make use of that expert's analysis at trial, D. 7-4 ¶¶ 11–21. O'Brien's failure to make full use of evidence disclosed by the government is not inconsistent with McCullough's alleged failure to provide all exculpatory evidence. Moreover, while the action against O'Brien noted his failure to use Segments 1 and 2 at trial after they were disclosed on February 24, 2022, D. 7-4 ¶¶ 19–20, Ryan also describes that disclosure in her complaint here, D. 1 ¶ 40. Defendants assert that O'Brien's February 28, 2022 pretrial statements to the court "made abundantly clear that he was aware of the two video segments," D. 7 at 4, but at no point in those statements does O'Brien reference Segments 1 and 2, see D. 7-7; D. 11 at 5 n.5, and O'Brien's assertions regarding a "skip in the video" do not suggest he knew the two underlying videos existed and would reveal a time gap,

see D. 7-7 at 7–9.  Indeed, although the ADA stated that "the video that the Commonwealth intend[ed] to offer" was comprised of "two different segments," rather than acknowledge the time gap between the two, she insisted they occurred "one [] right [] after the other."  Id. at 10.

Second, drawing all inferences in Ryan's favor, the Court does not conclude that Ryan persuaded a court to accept her earlier position.  "The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation."  Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010).  Applying the doctrine with caution "avoid[s] impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement."  Id. (quoting Teledyn Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)) (internal quotation marks omitted).  "Generally speaking, settlement 'neither requires nor implies any judicial endorsement of either party's claims or theories.'"  Id. (quoting In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004)).  Here, because nothing in the docket of the malpractice case suggests any endorsement of Ryan's claims or theories, the court will not depart from the general rule.  See D. 7-5.

### B.    Ryan Has Plausibly Alleged a Due Process Violation Against McCullough Under 42 U.S.C. § 1983 As to the Konrad Emails but Not as to Segments 1 and 2 (Count I)

Ryan asserts McCullough violated her due process rights by withholding Segments 1 and 2 and the Konrad emails.  D. 1 ¶¶ 47–54.  It is well settled that a defendant is constitutionally entitled to "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963); see Kyles v. Whitley, 514 U.S. 419, 433 (1995).  The

government is obligated to provide such exculpatory evidence, even without a request for the same by the defendant.  Kyles, 514 U.S. at 433.

> 1.    *Segments 1 and 2*

"As a threshold matter," McCullough argues she did not violate Brady because she gave the DA full access to the family's Ring video system two hours after receiving it from the Konrads and within five days of the assault.  D. 7 at 8–9; D. 19 at 2–3.  But this argument relies upon documents outside of the complaint and outside of the limited additional documents the Court may consider at this motion to dismiss stage.  See KPM Analytics, 2021 WL 2982866, at *21 n.4.  McCullough also asserts she did not violate Brady because Ryan's malpractice action alleged O'Brien possessed the relevant videos in or around March 2020.  D. 7 at 9.  But as discussed, Ryan's malpractice action does not establish that O'Brien possessed the relevant evidence in or around March 2020.  See D. 7-4.  It instead alleges only that O'Brien was aware of a potential lapse in the Video at that time.  Id. ¶¶ 11–12.

In addition, McCullough argues "the [c]omplaint does not adequately allege that the video segments . . . [were] 'exculpatory' at all" because "with or without the alleged three second gap, the video evidence was fully inculpatory that Ryan committed an assault on the infant victim."  D. 7 at 9.  But the complaint alleges their exculpatory nature where McCullough "confirmed . . . that the Video depicted a continuous event," D. 1 ¶ 36, while Segments 1 and 2 revealed it did not, and in fact, revealed no footage of the assault existed at all, id. ¶ 73.

Nevertheless, "[a] delay in turning over evidence contravenes Brady only if the delay itself is prejudicial."  Cunningham v. Shoop, 23 F.4th 636, 676 (6th Cir. 2022).  "As long as ultimate disclosure is made before it is too late for the defendants to make use of any benefits of the evidence, Due Process is satisfied."  United States v. Ziperstein, 601 F.2d 281, 291 (7th Cir.

1979).  Even as alleged, McCullough discharged her <u>Brady</u> obligations with respect to Segments 1 and 2 two weeks before trial by forwarding the Segments to the Needham Police Prosecutor. D. 1 ¶ 39; <u>Penate v. Kaczmarek</u>, No. 17-cv-30119-KAR, 2022 WL 2191699, at *13 (D. Mass. June 17, 2022) (observing that "police officers generally discharge their <u>Brady</u> obligations by turning over [exculpatory] evidence to the prosecutor[ ], who in turn ha[s] a duty to disclose the evidence to the defense") (alterations in original) (quoting <u>Goudy v. Cummings</u>, 922 F.3d 834, 837 (7th Cir. 2019)); <u>see</u> <u>United States v. Watson</u>, 76 F.3d 4, 8 (1st Cir. 1996) (concluding no <u>Brady</u> violation occurred where exculpatory evidence was disclosed before trial).[2]  Accordingly, McCullough's motion to dismiss Count I is allowed with respect to the delayed disclosure of Segments 1 and 2.[3]

### 2.    The Konrad Emails

Unlike Segments 1 and 2 of the Video, the Konrad emails were never disclosed.  D. 1 ¶ 41.  Exculpatory evidence under <u>Brady</u> "includes evidence that casts doubt on the credibility or accuracy of any witness the government anticipates calling at trial or any evidence the government expects to proffer at trial."  <u>United States v. Moon</u>, No. 11-cr-10223-DJC, 2012 WL 2178923, at *2 (D. Mass. June 13, 2012), <u>aff'd</u>, 802 F.3d 135 (1st Cir. 2015).  The Konrad emails, which include a message from Victoria saying, "spoke with [R]ing and they do not have

---

[2] Also, any faults in the ADA's disclosure are not attributable to McCullough.  <u>See</u> <u>Penate</u>, 2022 WL 2191699, at *13; <u>Beaman v. Freesmeyer</u>, 776 F.3d 500, 512 (7th Cir. 2015).  Moreover, although O'Brien failed to use the Segments at trial, he could have done so.  <u>Cunningham</u>, 23 F.4th at 676 (observing prejudice did not result from the mid-trial disclosure of exculpatory evidence which was not effectively used at trial because defense counsel could have requested a continuance to make better use of the material); <u>see</u> <u>United States v. Smith</u>, 292 F.3d 90, 102 (1st Cir. 2002) (noting that "defense counsel must typically request a continuance to preserve a claim of prejudice by delayed disclosure of evidence").

[3] Because the Court finds McCullough's delayed disclosure of Segments 1 and 2 did not violate <u>Brady</u>, it does not reach qualified immunity with respect to this claim.

the uninterrupted video," D. 1 ¶ 18, see id. ¶¶ 19, 21–22, plausibly contradict Victoria's trial testimony that the Video showed a continuous action, id. ¶ 42.  Because they may have been used to impeach Victoria at trial, Ryan has plead a due process violation with respect to these documents.

McCullough asserts that she is entitled to qualified immunity as to this claim.  D. 7 at 10–11; D. 19 at 5.  In determining whether a government official is entitled to qualified immunity, the Court must determine:  (1) "whether the plaintiff's version of the facts makes out a violation of a protected right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021) (quoting Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017)).  The latter question "is not whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's conduct was unreasonable, given the state of the law when he acted."  Alfano, 847 F.3d at 75.  "[T]he right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Id.  Certainly by 2019, the date of the alleged conduct here, "the law was firmly settled . . . that a law enforcement officer may not deliberately suppress material evidence that is favorable to a defendant."  Drumgold v. Callahan, 707 F.3d 28, 43 (1st Cir. 2013).  Because, as established, Ryan has plead a suppression of exculpatory evidence with respect to the Konrad emails, the Court does not conclude that qualified immunity bars this claim, and her motion to dismiss Count I is denied with respect to the Konrad emails only.

**C.    Ryan Has Alleged a Fourth Amendment Violation Unlawful Seizure Under 42 U.S.C. § 1983 (Count II)**

Count II appears to allege a Fourth Amendment claim for malicious prosecution.  D. 1 ¶¶ 55–61.  Such claim requires:  "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which [is] often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'"  Thompson v. Clark, 596 U.S. 36, 44 (2022) (internal citation omitted).

Here, McCullough asserts Ryan has failed to allege such claim plausibly in violation of the Fourth Amendment because there was probable cause to arrest and charge Ryan.  D. 7 at 11– 14.  "[P]robable cause exists when the facts and circumstances within the [police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense."  Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (alterations in original) (internal quotation marks omitted) (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987)).  This Court has found an "intentional or reckless omission of material exculpatory facts from information presented to a magistrate" on the part of a police officer "may . . . amount to a Fourth Amendment violation."  Wilson v. Town of Fairhaven, No. 18-cv-11099-PBS, 2019 WL 1757780, at *19 (D. Mass. Mar. 4, 2019) (internal citation omitted), report and recommendation adopted, No. 18-cv-11099, 2019 WL 1760591 (D. Mass. Mar. 19, 2019).  This is what Ryan has alleged.

According to McCullough, probable cause existed because a neutral clerk-magistrate and a judge made independent determinations of probable cause.  D. 7 at 11–12.  But drawing all inferences in Ryan's favor, as the Court must do at this stage, neither determination accounted

14

for the exculpatory evidence McCullough withheld.  And indeed, as McCullough acknowledges, when a police officer fails to disclose exculpatory evidence, separate determinations of probable cause do not break the causal chain.  See D. 7 at 12 (quoting Wilson, 2019 WL 1757780, at *20). Nor is McCullough entitled to qualified immunity as to this claim as "[i]t is clearly established law that the Fourth Amendment requires that arrests be based upon probable cause."  Martínez-Rodríguez v. Guevara, 597 F.3d 414, 420 (1st Cir. 2010).  The Court, therefore, denies McCullough's motion to dismiss Count II.

> **D.    Ryan Has Alleged a Malicious Prosecution Claim Against McCullough but Not Against the Town (Count III)**

> *1.    Ryan's Malicious Prosecution Claim is Not Time Barred*

Defendants urge dismissal of Ryan's state-law claims on the basis that they were not timely presented.  D. 7 at 17–18.  Under Massachusetts law, civil damages actions against public employers must first be presented "in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."  Mass. Gen. L. c. 258, § 4. Plaintiffs must present their claims "in strict compliance with the statute."  Gilmore v. Commonwealth, 417 Mass. 718, 721 (1994) (quoting Weaver v. Commonwealth, 387 Mass. 43, 47 (1982)).  "A cause of action arises for purposes of presentment under § 4 when it accrues under [the Massachusetts] discovery rule."  Magliacane v. City of Gardner, 483 Mass. 842, 851 (2020).  Under Massachusetts law, "a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) [she] has suffered harm; (2) [her] harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Id. (alterations in original) (quoting Harrington v. Costello, 467 Mass. 720, 727 (2014)).

Defendants argue that because, according to Ryan's malpractice action, her defense attorney, O'Brien, became aware of at least some issue involving the Ring videos "no later than

some time in or before March 2020[,] [h]er September 2022 presentment was untimely." D. 7 at 18. But Defendants point to nothing in the complaint or in the admitted exhibits indicating Ryan knew or should have discovered by March 2020 that Segments 1 and 2 and the Konrad emails were withheld. In fact, as alleged, the non-disclosure of Segments 1 and 2 was not "knowable" until those segments were sent to O'Brien on February 24, 2022. D. 1 ¶ 40. Ryan timely presented her claim to the Town of Needham less than two years later, on September 22, 2023. Id. ¶ 76.

2.    *Ryan Has Alleged a Malicious Prosecution Claim Against McCullough*

A malicious prosecution claim under Massachusetts law requires three elements: "(1) the defendant commenced an original action without probable cause, (2) with malice, and (3) that the original action terminated in [plaintiff's] favor." Yacubian v. United States, 750 F.3d 100, 108–09 (1st Cir. 2014). McCullough asserts that Ryan has not plausibly alleged facts supporting the first and third elements. D. 7 at 15–17. Because, as discussed above, Ryan has sufficiently alleged McCullough commenced the original action without probable cause, the remaining question is whether the subsequent *nolle prosequi* constitutes a termination in Ryan's favor.

For an action to be terminated in plaintiff's favor "the reasons stated for the *nolle prosequi* or dismissal must be consistent with the innocence of the accused. The circumstances of the abandonment must compel an inference that there existed a lack of reasonable grounds to pursue the prosecution." Wynne v. Rosen, 391 Mass. 797, 800–01 (1984). "Under the SJC's decision in Wynne, a court can look beyond the text of a *nolle prosequi* to determine whether an action terminated in plaintiff's favor." Johnson v. Charbonnier, No. 13-cv-13301-ADB, 2015 WL 8215892, at *6 (D. Mass. Dec. 8, 2015). !

Here, the *nolle prosequi*, which states that "[w]ithout testimony from the victim's mother, the Commonwealth will be unable to satisfy its burden at trial," D. 7-8 at 2, is "consistent with" Ryan's innocence, and drawing all inferences in Ryan's favor, may well "compel an inference that there existed a lack of reasonable grounds to pursue the prosecution," Wynne, 391 Mass. at 800–01; Schand v. City of Springfield, 380 F. Supp. 3d 106, 127, 137 (D. Mass. 2019) (concluding a *nolle prosequi*, stating that "[t]he time elapsed since the date of offense, availability of witnesses and the continued examination of newly discovered evidence do not allow for the continued prosecution of the case at this time . . . evidences a termination of the action in Plaintiff's favor") (alteration in original) (internal quotation marks omitted).  !

Defendants assert that a *nolle prosequi* "'based on the unavailability of witnesses due to the passage of time' does 'not compel an inference that there existed a lack of reasonable grounds to pursue the prosecution.'"  D. 7 at 16–17 (quoting Miller v. Home Depot USA, Inc., 79 Mass. App. Ct. 1127, 1 (2011)).  But the *nolle prosequi* said the Konrads "[did] not wish to testify," it did not say they were unavailable to testify.  D. 7-8 at 2.  At the motion to dismiss stage that difference is significant:  the Konrads' decision not to testify at Ryan's re-trial may well have related to the merits of the case against Ryan.  See Osman v. Dwan, No. 20-cv-11356-NMG, 2021 WL 11505292, at *4 n.3 (D. Mass. July 30, 2021) (finding a termination in plaintiff's favor was sufficiently alleged when a *nolle prosequi* resulted from a witness's failure to appear for trial and it was "not clear whether [the witness's] failure to appear for trial had anything to do with the merits of the case against [the plaintiff]").  The Court, therefore, denies McCullough's motion to dismiss.

       3.     *The Town of Needham is Immune from the Malicious Prosecution Claim*

Section 10(c) of the MTCA immunizes public employers and public employees acting in their official capacities from suit for intentional torts, including malicious prosecution. Mass. Gen. L. c. 258, § 10(c); <u>see, e.g.</u>, <u>Damon v. Hukowicz</u>, 964 F. Supp. 2d 120, 136 (D. Mass. 2013) (granting a police department's motion to dismiss a malicious prosecution claim because the claim is barred by § 10(c)). The Town's motion to dismiss Count III is, therefore, allowed.

**E.    Ryan Has Not Alleged a Violation of the MTCA Against the Town of Needham (Count IV)**

Ryan describes Count IV as "an alternative cause of action, solely against the Town . . . should the trier of fact determine that McCullough's conduct in suppressing Segments 1 and 2 was merely negligent." D. 11 at 18. The Town urges dismissal of this claim because: (1) Ryan has failed to timely present the claim, (2) Count IV is independently barred by § 10(h) and § 10(j) of the MTCA and (3) Ryan "attempts to circumvent the Town's immunity under Section 10(c) of the MTCA" and "fails to adequately allege any independent negligence by the Town." D. 7 at 17–20; <u>see</u> Mass. Gen. L. c. 258 §§ 4, 10(c), (h), (j).

As an initial matter, this Court notes that Ryan's MTCA claim is not time barred for the same reasons discussed with respect to Count III. Nor is the claim barred by Sections 10(h) and 10(j) of the MTCA. Mass. Gen. L. c. 258 §§ 10(h), (j). The Town argues that § 10(h) bars all claims arising from a negligent police investigation. D. 7 at 18–19. But courts have not interpreted § 10(h) so expansively. Instead, they have "construed § 10(h) to 'immunize a municipality when the criminal acts of a third person are a cause of a plaintiff's harm,'" but not to provide immunity where, as alleged here, the officer's conduct "was the direct and primary cause of the harm in question." <u>Rivera v. City of Worcester</u>, Civ. No. 12-cv-40066-TSH, 2012 WL 5354153, at *4 (D. Mass. Oct. 26, 2012) (citations omitted). Likewise, while § 10(j)

exempts the Town from liability for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer," Mass. Gen. L. c. 258 § 10(j); see D. 7 at 19–20, the complaint alleges that McCullough's misconduct was the original cause of Ryan's injury, see D. 1 ¶¶ 18–20, 25–26, 28–36, 41. The § 10(j) exemption is, therefore, inapplicable.

Nevertheless, Ryan does not circumvent the Town's immunity because she does not allege an independent act or omission constituting negligence on the part of the Town. See D. 7 at 19; Hunter v. City of Bos., No. 22-cv-10549-FDS, 2023 WL 2140475, at *3 (D. Mass. Feb. 21, 2023). Rather, Ryan's "negligence claim arises out of an intentional tort allegedly committed by [McCullough]." Hunter, 2023 WL 2140475, at *3 (quoting Roberts v. Town of Bridgewater, No. 15-cv-10266-DJC, 2015 WL 4550783, at *3 (D. Mass. July 28, 2015)). Here, Ryan's MTCA claim against the Town is based upon McCullough's failure to "exercis[e] any rightful or reasonable discretion in charging [] Ryan based on the Video which, in view of the fact that McCullough had watched Segments 1 and 2, she knew or should have known did not support the charge." D. 1 ¶ 74. But these are the same facts Ryan uses to support her malicious prosecution claim against McCullough. See id. ¶¶ 56–57. The Town is immune from such claims. Hunter, 2023 WL 2140475, at *3 (observing that a plaintiff "cannot seek to hold the [c]ity vicariously liable for an employee's intentional conduct by summarily relabeling it as negligent") (quoting Milcent v. City of Bos., No. 14-cv-13347-GAO, 2016 WL 845303, at *4 (D. Mass. Feb. 29, 2016)). "A contrary holding would permit a plaintiff to circumvent the § 10(c) exclusion simply by adding the magic word 'negligence' to what is, in substance, an

intentional tort claim." <u>Weiss v. Lavallee</u>, No. 01-cv-40177-FDS, 2006 WL 8458637, at *4 (D. Mass. Feb. 15, 2006).  Accordingly, the Court dismisses Count IV.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS the Town's motion to dismiss and ALLOWS McCullough's motion to dismiss Count I, as to Segments 1 and 2 only, and DENIES McCullough's motion to dismiss Count I as to the Konrad emails, Count II and Count III.  D. 6.

**So Ordered.**

/s Denise J. Casper
United States District Judge
